IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) ) | |
| CITY CONCRETE | ) ) ) | COMPLAINT |
| Defendant. | ) ) ) | JURY TRIAL DEMAND |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, Title I of the Civil Rights Act of 1991 and the Age Discrimination in Employment Act (ADEA) to correct unlawful employment practices on the bases of national origin, age and retaliation, and to provide appropriate relief to Mr. David Piyavunno who was adversely affected by such practices. The Equal Employment Opportunity Commission (Commission or EEOC) alleges that Defendant Employer failed to place Mr. Piyavunno into a sales position because of his age and national origin, an Asian Filipino, subjected Mr. Piyavunno to national to origin harassment, and failed to take prompt and remedial action in response to his complaints. The Commission further alleges that when Mr. Piyavunno complained about the discriminatory treatment and filed a charge with the Equal Employment Opportunity Commission, he was forced to quit.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Sections

706(f)(1) and (3) of Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a and 2 U.S.C. §626.

2. The unlawful employment practices alleged below were and are now being committed within the jurisdiction of the United States District Court for the Western District of Tennessee, Western Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the Commission), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and the ADEA, and is expressly authorized to bring this action by § 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000-5(f)(1) and (3) and 29 U.S.C. § 626.

4. At all relevant times, Defendant, City Concrete (Defendant Employer), has continuously been a foreign corporation doing business in the State of Tennessee and the City of Memphis. Defendant Employer has continuously had at least fifteen employees.

5. At all relevant times Defendant Employer has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## STATEMENT OF CLAIMS

6. More than thirty days prior to the institution of this lawsuit, David Piyavunno filed a charge of discrimination alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

7. Since at least approximately June 2006, Defendant Employer has

engaged in unlawful employment practices in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. § 2000e-2(a) § 2000e-3(a) and 29 U.S.C. 623(a).

8. The unlawful employment practices involved failing to hire Mr. Piyavunno because he is an Asian Filipino.

a. David Piyavunno was initially hired as a mechanic for Carrier Excavation, a predecessor of Titan Concrete (which was later acquired by City Concrete) on July 18, 1994.

b. In June, 2005, Mr. Piyavunno began working for Mitch Mills' in the sales department. Mitch Mills was the sales and marketing director.

c. In November 2005, Titan Concrete merged with City Concrete.

d. Shortly after April 2006 when Mr. Mills left City Concrete, Mr. Piyavunno was removed from the sales department and was given the option of taking a driver or mechanic position. He reluctantly chose the driver position, the job he held until he left the in March 2007.

e. Mr. Piyavunno was the only sales person removed from the sales department.

f. Approximately five months after Mr. Piyavunno was transferred out of the sales technician position, a White male was placed into a sales position.

g. The Commission alleges that Mr. Piyavunno was removed from the sales position and replaced by a White male because he is an Asian Filipino.

h. The Commission further alleges that management officials claimed that they could not understand Mr. Piyavunno because he is "Asian," he has a "language barrier" and the company should not have to hire a "foreigner" in the sales department.

   i.  A company official also referred to Mr. Piyavunno as a "Jap."

   j.  The effect of the practices complained of in paragraphs 8a-j above has been to deprive David Piyavunno of equal employment opportunities and to otherwise adversely affect is status as employees because he is Asian and Filipino.

   9.  The unlawful employment practice involved removing Mr. Piyavunno from the sales department because of his age and then later replacing him with a younger individual.

   a.  The Commission alleges that company officials who took over the running of City Concrete determined that Mr. Piyavunno should be removed so that a younger individual could be placed in sales.

   b.  The new management from City Concrete wanted "young blood in sales."

   c.  The effect of the practices complained of in paragraphs 9a and b above has been to deprive David Piyavunno of equal employment opportunities and to otherwise adversely affect is status as an employee because of his age (54).

   10.  The unlawful employment practices involved subjecting Mr. Piyayunno to harassment because of his national origin, Asian and Filipino.

   a.  Mr. Piyavunno heard and was told by other employees that because he was Asian, he was not considered competent.

   b.  Management employees also made fun of his accent and told him that they could not understand him.

   c.  Mr. Piyavunno was also subjected to demeaning treatment, humiliation, and threats that other non-Asian employees did not have to endure.

   d.  Mr. Piyavunno complained about the alleged harassment to a human

resources official, but nothing was done.

  e. The unwelcome harassment was sufficiently pervasive and severe to alter the terms and conditions of Mr. Piyavunno's employment and create an abusive working environment.

  f. The effect of the practices complained of in paragraphs 10a-f above has been to deprive David Piyavunno of equal employment opportunities and to otherwise adversely affect his status as an employee because of his national origin, an Asian Filipino.

  11. The unlawful employment practices involved subjecting Mr. Piyavunno to retaliation because he complained to company officials about discrimination and filed a charge of discrimination with the Commission alleging discrimination based on age and national origin.

  a. Management officials repeatedly threatened to terminate Mr. Piyavunno after he complained about discrimination.

  b. After Mr. Piyavunno filed the EEOC charge on June 14, 2006, Management officials began to assign him to the defective trucks each day.

  c. In one instance, the truck had a bad air leak in the brake line which caused Mr. Piyavunno to make an 18 mile trip driving in 1st and 2nd gear for his own safety.

  d. A manager further began to complain to Mr. Piyavunno about filing the EEOC charge.

  e. The effect of the practices complained of in paragraphs 11a-d above has been to deprive David Piyavunno of equal employment opportunities and to otherwise

adversely affect his status as an employee because he opposed unlawful conduct, including filing a charge of discrimination.

12. The unlawful employment practice involved subjecting David Piyavunno to constructive discharge because of his complaints of discrimination.

a. After Mr. Piyavunno reported that his assigned trucks had mechanical problems, he was usually advised to go ahead and take the trucks anyway. His complaints were constantly ignored.

b. When the problems he reported earlier became more serious as he continued his route, he was yelled at, disparaged, berated, and blamed for whatever problems were associated with the trucks.

c. Out of depression and fear for his life, Mr. Piyavunno ultimately quit the job.

d. The effect of the practices complained of in paragraphs 12a-c above has been to deprive David Piyavunno of equal employment opportunities and to otherwise adversely affect his status as an employee because of his national origin, an Asian Filipino and because he opposed unlawful discrimination.

13. The unlawful employment practices complained of in paragraphs 8 though 12 above were intentional.

14. The unlawful employment practices complained of in paragraphs 8 through 12 above were done with malice and/or with reckless indifference to the federally protected rights of David Piyavunno.

## PRAYER FOR RELIEF

Therefore the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant Employer and its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates against employees because of their age, national origin, or retaliation;

B.      Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for Asian employees which eradicate the effects of Defendant Employer's unlawful employment practices described in paragraphs 8 through 12 above;

C.      Order Defendant Employer to make whole David Piyavunno by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of Defendant's unlawful employment practices, including but not limited to rightful-place reinstatement;

D.      Order Defendant Employer to make whole David Piyavunno, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices, in amounts to be determined at trial.

E.      Order Defendant Employer to make whole David Piyavunno, by providing compensation for nonpecuniary losses resulting from the unlawful employment practices, including emotional and psychological pain and suffering, in amounts to be determined at trial;

F.      Order Defendant Employer to pay David Piyavunno, punitive damages for its malicious and/or reckless conduct, in amounts to be determined at trial;

G.     Grant such further relief as the Court deems necessary and proper in the public interest; and

H.     Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

**JAMES LEE**
Deputy General Counsel

**GWENDOLYN YOUNG REAMS**
Associate General Counsel


s/ Faye A. Williams (w/ permission DS)
**FAYE A. WILLIAMS**
Regional Attorney
Tennessee Bar No. 011730


s/ Deidre Smith
**DEIDRE SMITH**
Supervisory Trial Attorney
Tennessee Bar No. 018499

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
1407 Union Avenue, 9th Floor
Memphis, TN 38104
Telephone:   (901) 544-0140